REDMANN, Judge
(dissenting).
In my opinion a man who has contracted to have a new house built is entitled to a new house in every case. This is especially true here where the contract obliged the builder to take out insurance “in such amounts on said work as will fully cover the cost of replacing the same * * * to be issued and made payable in such manner as to protect the interest of” the owner (emphasis supplied).
Whether or not the builder’s insurance paid replacement cost for the extensive hurricane damage, the trial court declined to allow the owner to learn. And, while the owner complains of this ruling, it may be irrelevant in a suit for costs of completion of the original contract (the builder *615 having in a sense repaired the hurricane damage). Yet the provision in the contract evidences the plain intent of the parties: damaged work was to be replaced. The owner was, as the basic contract provided, to have a new house.
A reading of this record causes one to wonder whether this is really a case of “substantial performance.” From falling roof to cracking floor, with sagging sheet-rock and chipped and cracked. bricks in-between, it appears much of the contract was not performed well.
Nevertheless the final result of applying the substantial performance doctrine would be correct, although there is unfairness in placing the burden of proof on the real defendant, the owner.
Rendering judgment in the builder’s favor for the full amount of the contract, and in the owner’s favor for the cost of completion, is of course incorrect: this is the mathematics, but not the form, of the judgment in substantial performance cases; the finding of defects is precisely a finding the contractor is rot entitled to full contract price, but price less cost of remedying defects.
But the real wrong of the majority opinion is that it substitutes a patched up hurricane victim for the new house the owner contracted to pay $43,000 for.
A thrifty homeowner may decide, for example, that he can get by with replacing only the bottom half of his sheetrock walls ruined by hurricane waters. But, as the expert testimony establishes, half-replaced water-damaged walls are not equivalent to new walls. And in our case the parties bargained for a new house, and for insurance for “replacing” damaged work, which should have eliminated the bulk of this lawsuit.
I agree with the majority’s review of the trial judge’s list except as follows.
I disagree with the majority’s reversal of the trial judge’s conclusion the kitchen and bathroom cabinets “should be replaced”, items 5 and 6. To say the testimony does not support a finding is no response to the trial judge’s personal visitation and visual inspection of the cabinets. Full replacement costs $2640 rather than _$519, a difference of $2121.
I also disagree with the allowance of zero on the trial judge’s finding (again, after personal inspection) of “chipped and cracked bricks throughout”, item 9. The mathematics of the judgment suggest the trial judge awarded $1,000. Remembering that this lawsuit is really a demand by the man who put up all the chipped and cracked bricks to be paid $43,000, I believe the trial judge should be affirmed in (in effect) denying $1,000 of it because of the shoddy brickwork “throughout”.
(The $350 remark by the trial judge to which the majority referred was, at best, a reference to “the manner in which the brick work was laid up”, and appears to have related to a brick column or pillar: “Mr. Haase testified it would cost $350 to replace that, $350.00 to replace the pillar * * Mr. Haase gave no figure for brick work other than for the out-of-plumb brick column, and in fact testified “I think that the brick work looked very satisfactory.” And, to further confuse, his testimony was “It would cost me, at least, to replace the one column, I would say it would cost me $200.00 to come this far to do that little amount of brick work.”)
On item 7, refinishing sheetrock, the majority allowed $432. I would allow instead the $5,000 cost of complete replacement of sheetrock and treatment of studs, etc., and replacement of insulation. That Gilcrease stated he would not do this on his own house (meaning at his own expense) is irrelevant: here the owner was not repairing a house but having one built, and it should have been built right.
*616 The foregoing item would increase the majority’s award by $4,568, which added to earlier increases of $2,121 and $1,000 would make my total adjustment thus far $7,689 above the majority’s in the owner’s favor.
To this I would add the attorney’s fees stipulated in the contract, to be paid by both contractor and surety: “if said party of the second part [contractor] should * * * fail or refuse to * * * comply with any part' of this contract, then * * * all costs, charges or attorney’s fees incident to the completion or enforcement of this contract shall be a charge and lien against the party of the second part [contractor] and his surety * * * and may be deducted from the amount due or to become due him; * * * Even that part of the agreement quoted by the majority reads “that said surety * * * shall be liable for all * * * attorney’s fees, incurred in any * * * legal proceeding made necessary by the failure of the contractor to faithfully comply with the foregoing contract * * The contract fixes the fee “at” 5% of the $43,660 bond, and considering the great amount of dispute in this case I think we need not consider whether this fee provision could be enforced in full if the default were but slight. Here the fee of $2,183 is not obviously excessive, and I would award it.
In my opinion, therefore, the contractor should have judgment for $758.62 (being the $15,468.68 unpaid part of contract price, less: the $4,838.05 found by the majority, increased $7,689 by my views, and attorney’s fees of $2,183 payable under the contract). And since the plaintiff contractor has gotten judgment for less than Vis of the contract balance because of his nonperformance, and because of the contract stipulations that the contractor and the surety would be liable for costs, I would assess all costs, including expert witness fees, against the contractor and his surety in solido.
REDMANN, J., is of the opinion the rehearing should be granted.